(June 24, 1911.)

PAUL FRIEDRICH et al., Appellants, v. PATRICK DONAHUE, Respondent.

[116 Pac. 1029.]

APPEAL—DETERMINATION OF FACTS—CONCLUSIVENESS OF VERDICT.

(Syllabus by the court.)

1. A verdict based upon conflicting evidence will not be disturbed on appeal if there is any substantial evidence upon which the same may rest.

2. In an action of claim and delivery to recover possession of a steer, evidence examined, and *held* sufficient to support a verdict for defendant.

APPEAL from the District Court of the Fourth Judicial District, for Blaine County.   Hon. Edward A. Walters, Judge.

Action of claim and delivery to recover possession of a steer.   Judgment for defendant, from which and from an order denying a new trial plaintiffs appeal.   *Affirmed.*

Sullivan & Sullivan, for Appellants.

McFadden & Brodhead, for Respondent.

Counsel cite no authorities.

MacLANE, District J.—This action was one of claim and delivery to recover possession of a roan steer.   It was tried in the district court for Blaine county, and resulted in verdict and judgment for the defendant, from which and from an order denying a new trial plaintiffs appeal.

The sole assignment of error made in this court is that the evidence is insufficient to justify the verdict.   Under this assignment we do not review the weight of the testimony, nor consider how we, as trial judges, would have decided the case as original triers of fact, nor how, as such judges, we would have disposed of a motion for a new trial upon the same assignment; but the only question before us on appeal is whether there is any evidence in the record upon which the jury could base their verdict.   For it is a rule too well established to require citation of authority, and, indeed, explicitly admitted by appellants' counsel, that a verdict based on conflicting testimony will not be disturbed on appeal if there is any evidence upon which the same may rest.

The admitted facts of the case are that on April 29th, 1907, the defendant sold to plaintiffs, by bill of sale, all his cattle except five milk cows for the sum of $22 per head, described as follows: "Five three year old steers, six two year old steers, three bulls; balance about fifty-four head of stock cattle, cows, heifers and steers mixed.   All young calves not branded thrown in, and twelve head of the smallest branded

calves thrown in with said amount of cattle." Pursuant to this contract the cattle were delivered to the plaintiffs about June 1st, 1907, and at the time of delivery they were run through a chute and vented, that is, branded a second time with the defendants' brand, which is the customary way of indicating a sale of branded stock when sold to be shipped or butchered as these were. It is admitted that the roan steer in question in this action was included in the sale and was intended to be delivered to the plaintiffs, but the points in dispute are: First, whether it was actually delivered and paid for at the time of the delivery of the other cattle, and, second, if not so delivered and paid for, whether it was within the description of "twelve head of the smallest branded calves" which were to be thrown in without specific compensation.

On the first of these questions the plaintiffs, to make out their case in chief, rested upon the testimony of the plaintiff Henry Mehl alone, who, after testifying to the execution of the contract and the delivery of the cattle, said that this steer was delivered with the rest of the cattle on June 1st, 1907, but was missing on the final round-up, was afterward picked up and again lost, and was next seen in the defendant's field. On cross-examination he said that he received all the cattle stated in the contract at the time of delivery; that this roan steer was in the bunch of two-year-olds, that he could only identify it by the brand, that it was vented as the other cattle were, and that he had not seen it for a period of some two years prior to the commencement of this action. It thus appears that the plaintiffs' theory of the case was that this steer was one of the two-year-olds described in the contract, that it was delivered and paid for as such, and afterward came into the possession of the defendant in some manner which the evidence does not disclose. To meet this case the defendant testified, though after considerable vacillation and uncertainty, that this steer was born in the fall of 1906 and branded in late October or early November of that year. He explained the double brand as having been placed on the animal in March, 1907, because the first brand had become faded and dim. The defendant was corroborated by, or it

might be more correct to say that his testimony seems to have
been based on, that of his witnesses Farnsworth and Jones,
whose evidence was substantially the same, that this steer was
born the last of August or first of September, 1906, was
branded the first time in November following, and was
branded the second time about March 12th, 1907, for the
reason that the hair had grown out over the first brand so
that it was indistinguishable. These witnesses say that they
attempted to place the second brand immediately over the
first but were unable to do so because the calf kicked just as
they were putting on the brand. Neither of these witnesses
had seen the steer for two or three years prior to the trial,
but stated positively that they could identify him as the calf
they had branded. Mr. Farnsworth explained his identifica-
tion for the somewhat inconclusive reason "because I know
the critter," and stated further that it was because he was
branded twice and "by an exceptionally funny spot." He
says he could have picked him out from a hundred head of
stock. Mr. Jones identified him by his disposition, explain-
ing that "when you walked around him he acts the same,
looks at you; kind of sizes you up. . . . . Suppose his ac-
tions the same as always was, and the color and everything
else; nothing changed about the calf but his size; disposition
just the same; was pretty mean when a calf; another dis-
tinctive mark is a big white cross spot on him, kind of on
his rump." To rebut this testimony the plaintiffs relied on
the testimony of experts, who testified that they had examined
the teeth of this steer at the time of the trial, which showed
that he was at least five years old, and further, that in view
of his weight of 1,600 or 1,700 pounds, he could not be less
than that age; that a three year old steer could not weigh
more than 1,300 or 1,400 pounds. In surrebuttal the defend-
ant produced some testimony to the effect that cattle, unlike
horses, were not commonly judged by their teeth, but rather
by their general appearance, and estimated the age of this
steer at the time of the trial as about three years, which would
corroborate the defensive testimony of the defendant and his
witnesses that this steer was a calf at the time of the sale and

was hence not within the description of two-year-old steers, as claimed by the plaintiffs.

While the more scientific testimony of the plaintiffs' expert witnesses on this question of the age of the animal might be more satisfactory to us were it presented upon an original trial, yet we cannot say that the jury were bound as a matter of law to accept their opinions and to reject the positive statements of the defendant's witnesses who had watched the development of the calf, and the expansion of his intellect, with such solicitous interest from its birth to its emphatic protest against the indignity of a second brand in March, 1907. Counsel for appellant criticise Mr. Jones' psychological method of identification of an animal not endowed with any more mentality than the average range steer, but in view of the fact that the eyes of cattle have attracted favorable comment from the time at least of the Trojan war, we cannot hold that it must as a matter of law be wholly inconclusive with a jury. We therefore cannot hold that a verdict on this point is not sufficiently sustained by the evidence to satisfy the requirements of the rule by which we are governed in determining this question.

Turning to the second question which we have stated as urged by appellants' counsel, viz., conceding the respondent's testimony to the age of the calf as correct, it would then be a calf which was gratuitously included in the contract, we find that the respondent testified specifically that appellants were to pay for this calf. The bill of sale itself lends no aid to a determination of the question of the age of the mixed stock cattle which were to be paid for, and with respect to the branded calves to be thrown in it merely states that these were to be the young calves not branded and "twelve head of the smallest branded calves." There is nothing to show that this calf was one of the smallest branded calves, and if it was a branded calf larger than the twelve smallest of such calves, it would not be thrown in. Furthermore, the appellants' case is rested exclusively on the proposition that this was a two-year-old steer, and all their evidence was directed to the establishment of the age of the steer. Mr. Mehl says

that he received all the cattle covered by the contract on June 1st, 1907, but at the final round-up three were missing. He makes no complaint, and his testimony expressly negatives the idea that he did not receive the branded calves thrown in. While it appears fairly clear from the respondent's evidence as a whole that he was to receive little pay, if any, for cattle under yearlings, yet, as he says, the contract itself does not specify the age limit at which pay was to begin; and we think, in view of the fact that appellants made no complaint that they did not receive all the branded calves they were entitled to, but tacitly, at least, admitted they had received them, that the jury was not bound to discredit the respondent on this point.

For these reasons the judgment and order appealed from must be *affirmed,* and it is so ordered. Costs awarded respondent.

Ailshie, Presiding J., concurs; Sullivan, J., sat at the hearing but took no part in the decision.